**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**KATHLEEN BOGER,**

                                        **Plaintiff,**

            **vs.**                                                      **5:17-CV-00289**
                                                                        **(MAD/TWD)**

**NEW YORK STATE OFFICE OF PARKS,**
**RECREATION & HISTORIC PRESERVATION;**
**JOANNE D. MITCHELL; LAURA TULLY;**
**JOE MORISETTE; JANE DOE(S); and JOHN**
**DOE(S),**

                                        **Defendants.**

_____

**APPEARANCES:**                                    **OF COUNSEL:**

**BOSMAN LAW FIRM, LLC**                      **AJ BOSMAN, ESQ.**
3000 McConnellsville Road
Blossvale, New York 13308
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**               **TIMOTHY P. MULVEY, AAG**
**STATE ATTORNEY GENERAL**
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

       On February 21, 2017, Plaintiff brought this action in Onondaga Supreme Court alleging

that Defendants discriminated against her on the basis of age and gender when she was denied a

promotion to the Park Manager 1 position at Verona Beach State Park, and the position was

offered to three younger and less-qualified males.  _See generally_ Dkt. No. 2; Dkt. No. 63-25 at

94-96.  Plaintiff asserts two causes of action against Defendant New York State Office of Parks,

Recreation & Historic Preservation ("NYS Parks") for discrimination under Title VII of the Civil

Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA").

Plaintiff also asserts two causes of action against the individually named Defendants under 42

U.S.C. § 1983 for age and gender discrimination. *See* Dkt. No. 2 at ¶¶ 29-42. Lastly, Plaintiff

asserts three causes of action against all Defendants under the New York State Human Rights

Law ("NYSHRL") and Article I, § 11 of the New York State Constitution. *See id*. at ¶¶ 46-52. In

March 2017, Defendants removed the action pursuant to 28 U.S.C. §§ 1331 and 1441. *See*

*generally* Dkt. No. 1. The Court denied Plaintiff's motion to remand to state court. *See* Dkt. No.

30 at 7.

Currently before the court is Defendants' Motion for Summary Judgment, in which

Defendants claim that the non-discriminatory reasons for not hiring Plaintiff were (1) Plaintiff's

prior inappropriate interactions with park patrons and (2) a negative recommendation from NYS

Parks employee David Barone. *See* Dkt. No. 63-25 at 4, 5. Defendants further argue that there is

no evidence to support the conclusion that Plaintiff's age or gender played any role in Defendants'

hiring decision and that Plaintiff's claims should be dismissed in their entirety. *See id.* at 7.

## II. BACKGROUND

**A.     Local Rule 7.1(a)(3)**

Under Local Rule 7.1(a)(3), a party opposing a motion of summary judgment must file a

response "admitting and/or denying each of the movant's assertions" in the movant's Statement of

Material Facts. "Each denial shall set forth a specific citation to the record where the factual issue

arises." N.D.N.Y.L.R. 7.1(a)(3). Where the opposing party fails to follow Local Rule 7.1(a)(3),

the Court shall accept the properly supported facts stated in the movant's Statement of Material

Facts. *See id.* ("The Court shall deem admitted any properly supported facts set forth in the

Statement of Material Facts that the opposing party does not specifically controvert") (emphasis in original).

A proper denial to a fact asserted in an Local Rule 7.1 Statement may not introduce additional argumentation or irrelevant facts. *See id.*; *Siddiqua v. New York State Dep't of Health*, No. 14-CV-0372, 2018 WL 4554491, *6 n.2 (N.D.N.Y. Sept. 21, 2018); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"). When a plaintiff "'admits' many of the facts asserted by Defendants in their Rule 7.1 Statement but then includes additional facts and/or legal argument in those responses, … the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Plaintiff provides in her responses." *Maioriello v. New York State Office for People With Developmental Disabilities*, 272 F. Supp. 3d 307, 311 (N.D.N.Y. 2017) (citations omitted).

In Plaintiff's Responsive Statement of Material Facts, Plaintiff responds "NO DISPUTE" to several of Defendants' asserted facts and then proceeds to introduce immaterial facts and/or legal argument in violation of Local Rule 7.1(a)(3). *See* Dkt. No. 70-4 at ¶¶ 9, 35, 44, 53, 54. Accordingly, Defendants' properly supported facts to which Plaintiff responds "NO DISPUTE" are deemed admitted and Plaintiff's additional assertions are disregarded. *See Maioriello*, 272 F. Supp. 3d at 311; *CA, Inc. v. New Relic, Inc.*, No. 12-CV-05468, 2015 WL 1611993, *2 n.3 (E.D.N.Y. Apr. 8, 2015).

Local Rule 7.1(a)(3) also provides that, "[t]he non-movant may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs, followed by a specific citation to the record where the fact is established." *See also*

*Johnson v. City of Troy*, No. 1:14-CV-0817, 2016 WL 5107124, *8 n.12 (N.D.N.Y. Sept. 20, 2016) ("To the extent that a non-movant desires to set forth any additional material facts that he contends are in dispute, he or she is required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs").  Plaintiff's Responsive Memorandum of Law in Opposition to Summary Judgment sets forth additional facts in a "Statement of Facts" section rather than in separately numbered paragraphs.  *See* Dkt. No. 70-5 at 3-5.  Accordingly, Plaintiff's "Statement of Facts" section will be disregarded.

## B.    Background

In 2015, Plaintiff was a forty-nine year old female and an employee of Defendant NYS Parks.  *See* Dkt. No. 70-1 at 2; Dkt. No. 2 at ¶ 18.  The individually named Defendants are also employees of Defendant NYS Parks and were members of the 2015 interview panel for the Park Manager 1 position at Verona Beach Park.  *See* Dkt. No. 70-1 at 12.  The interview panel was comprised of one male, Defendant Morisette, age thirty-eight, and two females, Defendant Mitchell, age fifty-four, and Defendant Tully, age forty-eight.  *See id*.  Defendant Mitchell was the Assistant Regional Director and Defendants Tully and Morisette each held Park Manager positions.  *See id*.

Plaintiff was first employed at Defendant NYS Parks from January 1998 to January 2005 as Park Worker 1/Office Manager at Delta Lake State Park.  *See* Dkt. No. 63-2 at 2.  From October 2005 to April 2006, Plaintiff worked as Park Worker 1/Office Manager at Glimmerglass State Park.  *See id*.  In April 2008, Defendant NYS Parks rehired Plaintiff as Park Worker 3/Office Manager at Harriman State Park.  *See id*. at 1.  In December 2012, Plaintiff received a promotion and worked as Park Supervisor 1 at Walkway Over the Hudson State Historic Park.  *See id*.  In October 2012, Plaintiff transferred to James Baird State Park as Park Supervisor 1.  *See*

*id.* In April and May of 2015, Defendant NYS Parks notified Plaintiff about the opening for the civil service position of Park Manager 1 at Verona Beach State Park. *See* Dkt. No. 63-3 at 173-75.

When a state agency has an opening for a civil service position, it may seek candidates from (1) the "open-competitive list," which includes any individual who took the applicable examination, and (2) the "transition list," which includes any current employee of the agency. *See* Dkt. No. 63-4 at 1-2; Dkt. No. 63-5 at 104-06. The "Rule of Three" establishes the candidate pool for the hiring of each civil service position. *See* Dkt. No. 63-4 at 2. Under the Rule of Three, state agencies may only consider the individuals with the three highest test scores on the civil service examination and any individual with a test score tied with that of the test score of the third individual on the list. *See id.* Plaintiff had taken the civil service examination for the Park Manager 1 position prior to 2008 and received a score of eighty-five, making her eligible on both the open-competitive list and the transition list pursuant to the Rule of Three. *See* Dkt. No. 63-3 at 120; Dkt. No. 63-8 at 1-2. In April and May of 2015, Plaintiff received and responded to each of the "canvass letters" from Defendant NYS Parks for both lists. *See* Dkt. No. 63-3 at 175-76. Plaintiff's name was on the open-competitive list to interview for the Park Manager 1 position, but due to a clerical error, her name was omitted from the transition list. *See* Dkt. No. 63-8 at 1-2; Dkt. No. 70-1 at 19.

Defendants Mitchell, Tully, and Morisette conducted interviews of candidates on the transition list on May 27 and 28, 2015. *See* Dkt. No. 63-9. Plaintiff did not interview on May 27 or May 28, 2015 due to the omission of her name from the transition list. *See* Dkt. No. 63-3 at 176-77. Following such interviews, Defendants assert that their first choice for the Park Manager 1 position was a fifty year old female, Dorothy Nagle, but that they could not appoint her because

she did not obtain a high enough score on the civil service examination. *See* Dkt. No. 70-1 at 16; Dkt. No. 63-5 at 20-22; Dkt. No. 63-10 at 124-125; Dkt. No. 63-11 at 166-67, 214. Plaintiff denies this assertion and claims that Dorothy Nagle was not Defendants' first choice and that there is no contemporaneous written record of such preference. *See* Dkt. No. 70-1 at 30, 31; Dkt. No. 70-4 at ¶ 22; Dkt. No. 63-5 at 22.

On June 30, 2015, Plaintiff contacted Defendant Mitchell to inquire as to why she had not been interviewed for the Park Manager 1 position. *See* Dkt. No. 63-12. Defendant Mitchell then recognized that Plaintiff had been omitted from the transition list and scheduled an interview for July 10, 2015. *See* Dkt. No. 63-13; Dkt. No. 63-14 at 1.

Defendants contend that on July 10, 2015, Defendant Morisette encountered State Park Police Officer Ken Dapson on his way to interview Plaintiff. *See* Dkt. No. 63-10 at 8. During this conversation, Officer Dapson recommended against the hiring of Plaintiff due to an incident at Delta Lake State Park where Plaintiff used profanity towards a park patron and demanded the arrest of such patron. *See id.* at 61. Plaintiff denies this fact and contends that there is no written record of the conversation included in Defendant Mitchell's notes from Plaintiff's interview. *See* Dkt. No. 70-1 at 30-31; Dkt. No. 70-4 at ¶¶ 30-32. Plaintiff additionally cites to testimony of Defendant Morisette stating that his conversation with Officer Dapson did not affect his perspective of Plaintiff during her interview. *See* Dkt. No. 63-10 at 79.

Following the July 10, 2015 interview, Defendants Tully, Mitchell, and Morisette discussed Plaintiff's candidacy. *See* Dkt. No. 63-10 at 96-97. Defendants contend that during such discussion, Defendant Tully told Defendants Mitchell and Morisette about an incident while she was acting as Plaintiff's supervisor at Delta Lake State Park where Plaintiff used profanity and argued with a park patron. *See* Dkt. No. 63-11 at 50-54. Plaintiff denies that this discussion

6

occurred and maintains that there is no written record of it in Defendant Mitchell's notes written after the interview.  *See* Dkt. No. 70-1 at 30-31; Dkt. No. 70-4 at ¶ 36.

After Plaintiff's interview and the discussion with Defendants Tully and Morisette, Defendant Mitchell spoke with NYS Parks Regional Director Robert Hiltbrand, who was responsible for approving the candidate recommended by the interview panel.  *See* Dkt. No. 63-5 at 19-20.  Defendant Mitchell told Hiltbrand that Plaintiff's interview went well, but Defendants Morisette and Tully had concerns about hiring Plaintiff.  *See id.* at 19, 20, 24, 25.  Hiltbrand then called NYS Parks Employee David Barone on the phone who recommended against the hiring of Plaintiff.  *See* Dkt. No. 63-17 at 40.  Plaintiff denies all of Defendants' asserted facts regarding the negative recommendation that David Barone made to Robert Hiltbrand, arguing that there is no written record of such conversation nor is the recommendation cited in Defendants' response to Plaintiff's EEOC complaint.  *See* Dkt. No. 70-1 at exh. B.  Plaintiff also cites to Barone's testimony that the central purpose of his conversation with Hiltbrand concerned NYS Parks machinery and that their discussion of Plaintiff was "probably less than a minute" in length.  Dkt. No. 70-2 at 64; *see also* Dkt. No. 70-2 at 136-39.

On July 20, 2015, Defendant NYS Parks provided an updated list of candidates who Defendants could interview for the Park Manager 1 position.  *See* Dkt. No. 63-5 at 145; Dkt. No. 63-18; Dkt. No. 63-19.  Defendants Mitchell, Tully, and Morisette conducted interviews of the additional candidates from such updated list on July 30, July 31, and August 5, 2015.  *See* Dkt. No. 63-20.  Defendants used the same set of interview questions for all applicants for the Park Manager 1 position.  *See* Dkt. No. 63-21; Dkt. No. 63-5 at 75-76.

Defendants first offered the Park Manager 1 position to Robert Galuski, who refused to accept the offer.  *See* Dkt. No. 63-5 at 94-95.  From 2009 until the date of the interview, Robert

Galuski, age thirty-two, was a plumber at the Capital Facilities Construction Crew of NYS Parks ("CFCC"). *See* Dkt. No. 70-1 at 17, 56-60. Prior to working at the CFCC, Galuski was employed by Galuski Plumbing and Heating as a plumbing and HVAC contractor. *See* Dkt. No. 70-1 at 59. Defendants then offered the position to Brett Dunn, who also refused to accept the offer.[1] *See* Dkt. No. 63-5 at 95, 96. From 1997-2005, Dunn worked at Lorenzo State Historic Site as maintenance staff. *See* Dkt. No. 70-1 at 64. From 2005 until his interview for the Park Manager 1 position, Dunn had worked as an electrician and locksmith at the CFCC. *See id*. From the record, it appears that neither Galuski nor Dunn had any park supervision experience. *See id*.; Dkt No. 70-1 at 62-67.

Defendants made their third offer for the Park Manager 1 position to Hawley Carr, who accepted. *See* Dkt. No. 63-23. Hawley Carr, age thirty-nine, had eight years of supervisory park supervision as Park Worker 3 at Long Point State Park. *See* Dkt. No. 70-1 at 17, 40. Defendants notified Plaintiff in writing that she was not chosen for the Park Manager 1 position. *See* Dkt. No. 63-2 at 209. Plaintiff had minimal or no interaction with the individual Defendants prior to her interview and had not witnessed any of them make discriminatory remarks nor engage in discriminatory behavior against women or people over the age of forty. *See* Dkt. No. 63-3 at 180-206.

## III. DISCUSSION

### A.      Standard of Review

---

[1] The record does not indicate the age of candidate Brett Dunn. *See* Dkt. No. 70-4 at ¶ 49; Dkt. No. 63-24 at ¶ 49. However, resolving all ambiguities in favor of the nonmoving party, the Court will assume for the purposes of this motion that Brett Dunn is younger than Plaintiff. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      Summary Judgment Standards for Employment Discrimination Cases**

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "because direct evidence of an employer's discriminatory intent is rare and 'must often be inferred from circumstantial evidence.'" *Serby v. New York City Dep't of Educ.*, No. 09-CV-2727, 2012 WL 928194, *5 (E.D.N.Y. Mar. 19, 2012) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445

F.3d 597, 603 (2d Cir. 2006)).  However, "'[s]ummary judgment is appropriate even in

discrimination cases, for . . . the salutary purposes of summary judgment – avoiding protracted,

expensive and harassing trials – apply no less to discrimination cases than to other areas of

litigation.'"  *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed. Appx. 413, 415 (2d Cir. 2011)

(quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)).  Indeed, "'[i]t is not

beyond cavil that summary judgment may be appropriate even in the fact-intensive context of

discrimination cases.'"  *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-

Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).

"Even in the discrimination context . . . a plaintiff must provide more than conclusory

allegations to resist a motion for summary judgment."  *Holcomb*, 521 F.3d at 137 (citing *Meiri v.

Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).  A "nonmoving party 'must offer some hard evidence

showing that its version of the events is not wholly fanciful.'"  *Jeffreys v. City of New York*, 426

F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.

1998)).  "If the evidence [presented by the non-moving party] is merely colorable, or is not

significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249-50 (1986) (citations omitted).  The Second Circuit has held that:

> In discrimination cases, the inquiry into whether the plaintiff's sex
> (or race, etc.) caused the conduct at issue often requires an
> assessment of individuals' motivations and state of mind, matters
> that call for a "sparing" use of the summary judgment device
> because of juries' special advantages over judges in this area . . .
>
> Nonetheless, an employment discrimination plaintiff faced with a
> properly supported summary judgment motion must do more than
> simply show that there is some metaphysical doubt as to the
> material facts.  She must come forth with evidence sufficient to
> allow a reasonable jury to find in her favor.

*Brown v. Henderson*, 257 F.3d 246, 251-52 (2d Cir. 2001) (internal citations and quotations omitted).

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys. Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted). "Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citation omitted); *see also Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997) (same); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (same).

## C.    The *McDonnell Douglas* Standard

Plaintiff's discrimination claims are evaluated pursuant to the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

> Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S. Ct. 1817. If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. *Id.* Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination.

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *Holcomb*, 521 F.3d at 138). To rebut the articulated justification for the adverse action, "the plaintiff must show both

that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted).

**D.     Gender Discrimination**

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"  42 U.S.C. § 2000e–2(a)(1).  As previously mentioned, disparate treatment discrimination claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas*.

**1. Prima Facie Case**

To establish a *prima facie* case of discriminatory failure to promote requires Plaintiff to show that: "(1) [s]he is a member of a protected class; (2) [s]he applied and was qualified for a job for which the employer was seeking applicants; (3) [s]he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having plaintiff's qualifications."  *Yu v. N.Y. City. House. Dev. Corp.*, 494 Fed. Appx. 122, 124-25 (2d Cir. 2012) (quotation omitted).

In the present matter, Defendants do not dispute that Plaintiff has established a *prima facie* case for discriminatory failure to promote.  *See* Dkt. No. 63-25 at 4.

**2. Legitimate Reasons for Failure to Promote Plaintiff**

Under *McDonnell Douglas*, the burden then shifts to the defendant to "produce evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'"  *Carlton*, 202 F.3d at 136 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509). It is axiomatic that the supporting or opposing materials submitted on a motion for summary judgment "'must be admissible themselves or must contain evidence that will be presented in

admissible form at trial.'" *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (quotation omitted); *see also Texas Dept of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). With this evidence, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dept. of Cmty. Affairs*, 450 U.S. at 254 (internal citation omitted). Where a non-discriminatory reason is articulated by the defendant, "the presumption of discrimination raised by the *prima facie* case 'simply drops out of the picture.'" *Carlton*, 202 F.3d at 134-35 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 510-11).

In the present matter, Defendants state that the non-discriminatory reasons for their decision not to promote Plaintiff are (1) Plaintiff's prior inappropriate interactions with park-patrons, and (2) the recommendation against the hiring of Plaintiff made by NYS Parks employee David Barone to Regional Director Robert Hiltbrand. *See* Dkt. No. 63-25 at 4-5

The evidence supporting Defendants' first non-discriminatory reason centers around the testimony of Defendant Tully, as Plaintiff's former supervisor, and Defendant Morisette, from his encounter with Officer Dapson, concerning an incident or incidents at Delta Lake State Park where Plaintiff used profanity towards a park-patron and demanded the arrest of such patron. *See* Dkt. No. 63-10 at 8; Dkt. No. 63-24 at ¶¶ 35-36. This reason constitutes a legitimate, non-discriminatory reason for the decision not to hire Plaintiff because "customer service must be at the forefront of the Park Manager 1's daily responsibilities." Dkt. No. 70-1 at 13; *see also Edwards v. Onondaga Cmty. Coll.*, No. 14-CV-1329, 2016 WL 3519619, *5 (N.D.N.Y. June 22, 2016) (reasoning that hostility in the workplace was a legitimate, non-discriminatory reason for an adverse employment action).

The evidence supporting Defendants' second non-discriminatory reason is the testimony of David Barone, Robert Hiltbrand, and Defendant Mitchell regarding the negative recommendation made by David Barone to Robert Hiltbrand. *See* Dkt. No. 63-25 at 5; Dkt. No. 70-2 at 65. This reason would also constitute a legitimate non-discriminatory reason for not hiring Plaintiff, as negative recommendations or references may reasonably result in a candidate not receiving an offer of employment. *See, e.g., Milano v. Astrue*, No. 05-CV-6527, 2008 WL 4410131, *30-31 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 382 Fed. Appx. 4 (2d Cir. 2010) (noting that recommendations or lack thereof constitute a legitimate, non-discriminatory reason).

Based on this admissible evidence, the Court finds that Defendants have articulated two legitimate, non-discriminatory reasons for the decision not to recommend Plaintiff for the Park Manager 1 position.

### 3. Pretext

To establish pretext and avoid summary judgment, a plaintiff must come forward with evidence from which a reasonable jury could conclude that the nondiscriminatory reason offered by the defendant is a pretext for discrimination. *See Holcomb v. Iona College*, 521 F.3d 130, 141 (2d Cir. 2008). A plaintiff "is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating factors." *id*. at 138 (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)). "Conclusory and speculative allegations will not suffice to demonstrate discriminatory intent." *Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 313 (E.D.N.Y. 2014) (quoting *Henry v. N.Y. State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012)).

"[A] plaintiff may rely on evidence comprising her *prima facie* case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Colistra v. Cairo-Durham Cent. Sch. Dist.*, No. 16-CV-01053, 2018 WL 4211909, *12 (N.D.N.Y. Sept. 4, 2018) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013)). Pretext may also be shown "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate," non-discriminatory reasons for its action. *Zann Kwan*, 737 F.3d at 846.

"Courts have recognized that an employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001), *superceded in part on other grounds by* Fed. R. Civ. P. 37(c). "When a plaintiff seeks to prevent summary judgment based on the discrepancy in qualifications ignored by an employer, … the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id*. at 103 (internal quotation marks omitted).

In the present matter, the evidence supports Plaintiff's contention that Defendants may have disregarded Plaintiff's credentials. The EEOC report states that the Park Manager 1 "position requires excellent leadership and judgement. It involves supervising and training staff, operating and managing repairs and maintenance, dedication to public service, budgeting for park operations[,] compliance with deadlines for projects, and a commitment to clearly communicate and adhere to [Defendant NYS Parks'] policies and procedures." Dkt. No. 70-1 at 15. It is evident that Plaintiff was qualified for the Park Manager 1 position given her roughly fifteen

years of relevant employment at five NYS Parks, including supervisory experience and extensive safety training. Further, Defendant Mitchell testified at his deposition that Plaintiff was qualified for the position. *See* Dkt. No. 63-5 at 211.

The first candidate offered the position, Robert Galuski worked as a plumber for the CFCC from 2009 to 2015, and prior to that he was a plumbing and HVAC contractor. *See* Dkt. No. 70-1 at 59. The second candidate offered the position, Brett Dunn, also worked as a member of the CFCC as an electrician and locksmith from 2005-2015, and prior to that he was a member of the maintenance staff at a NYS Parks historic site. *See id.* at 64. It does not appear from the record that either Robert Galuski or Brett Dunn had any park supervisory experience. *See id.* The third and final person offered the position, Hawley Carr, held a supervisory position as Park Worker 3 for eight years and prior to that worked as a Park and Recreation Aide 4. *See* Dkt. No. 70-1 at 40. Although Plaintiff was better qualified than at least Robert Galuski and Brett Dunn, the Court does not think that the discrepancy in qualifications meets the demanding standard noted in *Byrnie* to create a genuine issue of material fact *on its own* with regard to pretext. *Byrnie*, 243 F.3d at 103. "Nevertheless, just because the discrepancy between [Plaintiff's and the three offerees'] qualifications does not on [its] own have the strength to create a material issue of fact, that does not mean the discrepancy is stripped of all probative value." *Id.*

As correctly noted in Defendants' Memorandum of Law, employers may use subjective criteria during the hiring process so long as those judgments are not made with discriminatory intent. *See Byrnie*, 243 F.3d at 104; *Buompane v. Citibank, N.A.*, No. 00-CV-7998, 2002 WL 603036, *14 (S.D.N.Y. Apr. 18, 2002) (citing *Lieberman v. Gant*, 630 F .2d 60, 67 (2d Cir. 1980)). An "'employer's explanation of its reasons must be clear and specific' in order to 'afford the employee a full and fair opportunity to demonstrate pretext.'" *Byrnie*, 243 F.3d at 105

(quotation omitted).  "A subjective evaluation, besides being clear and specific, must also be honest."  *Id*.

In the present matter, Defendants' proffered reasons for their decision not to hire Plaintiff are clear and specific, but Plaintiff raises credibility issues with respect to the honesty of Defendants' evaluation, which may permit a reasonable trier-of-fact to find that Defendants' reasons were pretext for discrimination.  *See id*.

Defendants' first proffered reason for denying Plaintiff the promotion is an incident at Delta Lake State Park where Plaintiff used profane language towards a park patron.  *See* Dkt. No. 63-10 at 61.  This incident took place about ten years before Plaintiff's interview.  *See* Dkt. No. 63-2 at 2.  Following the filing of Plaintiff's EEOC claim, Defendant Tully referred to the incident in an email to Defendant Mitchell as "*just one example* of when I witnessed Kathy using vulgarity in the workplace."  Dkt. No. 70-1 at 52 (emphasis added).  While noting that Plaintiff is generally pleasant to work with and performs her job well, Defendant Tully concluded that "it's just when customers have complaints that I think she takes things personal and loses control."  *Id*. However, in Defendant Tully's deposition, she referred to the incident as a "singular isolated event" and described that "it was isolated, it was the only one.  I had absolutely nothing else negative to say about her.  [Defendant Mitchell] asked me if she deserved a shot?  And I said, yeah."  Dkt. No. 63-11 at 55-56.  In addition, Defendant Mitchell testified that she suggested to Robert Hiltbrand that the alleged incident was "long ago," and Plaintiff's candidacy should still be considered.  Dkt. No. 63-5 at 37-38.  A reasonable trier of fact may find that Defendants' first reason is unworthy of credence considering it was characterized as a "singular isolated event," and occurred at least ten years prior to the hiring process.  Dkt. No. 63-11 at 55; *see Byrnie*, 243 F.3d at 103, 105; *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 146-47 (2000).

Defendant Mitchell further testified that the "deciding factor" with respect to Defendants' hiring decision was the negative recommendation of David Barone made to Robert Hiltbrand. Dkt. No. 63-5 at 64. David Barone stated that the central purpose of his phone conversation with Hiltbrand concerned an issue with NYS Parks equipment and that the discussion of Plaintiff's candidacy lasted "probably less than a minute." Dkt. No. 70-2 at 64-65, 136-40. Barone and Plaintiff worked together at NYS Parks for approximately three weeks. *See id.* at 138-39. A reasonable trier of fact may find that reliance on a recommendation that was less than one minute in length, from an individual who only worked with Plaintiff for such a short time a decade in the past may be unworthy of credence. *See Reeves*, 530 U.S. at 147-48.

Since this case requires an "assessment of individuals' motivations and state of mind," taken together with the superiority of Plaintiff's qualifications over Robert Galuski and Brett Dunn, and the credibility issues with Defendants' non-discriminatory reasons, the evidence would permit a reasonable trier-of-fact to conclude that the non-discriminatory reasons proffered by Defendants were pretext for discrimination. *Brown v. Henderson*, 257 F.3d 246, 251-52 (2d Cir. 2001). Accordingly, Defendants' motion for summary judgment as to Plaintiff's Title VII claim is denied.

## E.     Age Discrimination

The ADEA was created "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621. It is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623.

The burden-shifting analysis set forth in *McDonnell Douglas* applies to claims for ADEA violations. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)). Under this three-step framework, the initial burden is on the plaintiff to establish a *prima facie* case of age discrimination. *See id*. at 168.

### 1. *Prima Facie* **Case**

To establish a *prima facie* case of age discrimination under the ADEA, the plaintiff must demonstrate that (1) she was in the protected age group of forty years or older; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the identified adverse action occurred under circumstances giving rise to an inference of discrimination. *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003)). The purpose of the *prima facie* case is to create a presumption that, under these circumstances, an employer considered impermissible factors and, thus, "unlawfully discriminated against the employee." *Texas Dept. of Cmty. Affairs*, 450 U.S. at 254. This initial burden must be shown by a preponderance of the evidence, and the Second Circuit has characterized the burden as "not onerous," *Delaney*, 766 F.3d at 168, "not heavy" or "minimal," *Carlton*, 202 F.3d at 134, and "*de minimis*," *Chambers*, 43 F.3d at 37.

It is undisputed that Plaintiff satisfies the first three prongs of the *prima facie* requirement because she is over forty years of age, was qualified for Park Manager 1 position, and suffered an adverse action when she was denied promotion. *See* Dkt. No. 63-25 at 8.

The fourth prong of a *prima facie* case, requiring a plaintiff to establish that the adverse action occurred under circumstances giving rise to an inference of discrimination, can be established by showing that the plaintiff was replaced "by a significantly younger person."

*Carlton*, 202 F.3d at 135 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996)); *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (deciding that at the summary judgment phase, an eight-year "difference in age—though not large—is significant enough to support an inference in [Plaintiff]'s favor").

In the present matter, Plaintiff meets this *de minimis* burden, because the two offerees whose ages are known to the Court are seventeen and ten years younger than Plaintiff, respectively. *See Chambers*, 43 F.3d at 37; *D'Cunha*, 479 F.3d at 195; Dkt. No. 70-1 at 17. Therefore, Plaintiff has established a *prima facie* case for age discrimination.

### *2. Legitimate Bases for Refusal to Promote*

Under *McDonnell Douglas*, the burden then shifts to the defendant to "produce evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Carlton*, 202 F.3d at 136 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509). With this evidence, "'[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Delaney*, 766 F.3d at 168 (quotation omitted). Where a non-discriminatory reason is articulated by the defendant, "the presumption of discrimination raised by the *prima facie* case 'simply drops out of the picture.'" *Carlton*, 202 F.3d at 134-35 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 510-11).

As previously discussed, (1) Plaintiff's prior inappropriate interactions with park patrons, and (2) the recommendation against the hiring of Plaintiff made by NYS Parks employee David Barone are legitimate, non-discriminatory reasons for denying Plaintiff the promotion to Park Manager 1. *See Carlton*, 202 F.3d at 136 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509); *Milano*, 2008 WL 4410131, at *30-31; *Edwards*, 2016 WL 3519619, at *5.

### 3. Pretext

Without the presumption of the plaintiff's *prima facie* case of discrimination, "the burden shifts back to the plaintiff to offer proof 'through presentation of his [or her] own case and through cross-examination' that would allow a rational factfinder to conclude that the proffered reason was not the true reason for the adverse employment action, and that age was." *Carlton*, 202 F.3d at 135; *see also Delaney*, 766 F.3d at 168 (stating that the plaintiff must prove that the proffered reason is a "pretext" for age discrimination); *Gorzynski*, 596 F.3d at 106. "'[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Gorzynski*, 596 F.3d at 106 (finding that, "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision") (quotation omitted).

As previously discussed, Plaintiff was significantly better qualified than candidates Galuski and Dunn and credibility issues exist with respect to the non-discriminatory reasons proffered by Defendants. In consideration of such issues and because this case involves an "assessment of individuals' motivations and state of mind," the Court finds that Plaintiff has produced sufficient evidence which would permit a reasonable trier of fact to find that age was the "but-for" cause of Defendants' decision not to promote Plaintiff. *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's ADEA claim is denied.

## F.     42 U.S.C. § 1983 Equal Protection Claims

Plaintiff also raises two equal protection claims against the individually named Defendants for discriminatory failure to promote on the basis of age and gender. *See* Dkt. No. 2 at ¶¶ 35-42.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999) (citing 42 U.S.C. § 1983). "[T]he analysis for [§ 1983] claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (citation omitted); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015). Similarly, courts in the Second Circuit have applied the ADEA standard to age-based discrimination claims brought under § 1983. *See Hrisinko v. N.Y.C. Dep't of Educ.*, 369 Fed. Appx. 232, 234 n.2 (2d Cir. 2010); *Committe v. Yen*, No. 17-CV-0784, 2018 WL 2108193, *3 (N.D.N.Y. May 7, 2018); *Anand v. New York State Dep't of Taxation & Fin.*, No. 10-CV-5142, 2013 WL 3874425, *11 (E.D.N.Y. July 25, 2013).

Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's equal protection claims for substantially the same reasons it denies summary judgment on her Title VII and ADEA claims. *See Mills v. S. Connecticut State Univ.*, 519 Fed. Appx. 73, 77 (2d Cir. 2013) ("Because the analysis for § 1983 claims based on equal protection 'is similar to that used for employment discrimination claims brought under Title VII,' . . . Mills's equal protection claim fails for substantially the same reason as her Title VII claim") (quoting *Demoret*, 451 F.3d at 149); *Hrisinko*, 369 Fed. Appx. at 234 n.2.

## G. NYSHRL Claims

Plaintiff also brings a disparate treatment claim against Defendant NYS Parks for age and gender discrimination and claims against the individually named Defendants for aiding and abetting discrimination in violation of the NYSHRL. The New York State Human Rights Law provides as follows:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y. Exec. Law § 296(1)(a). Claims under the NYSHRL are governed by the same standards and will have the same outcome as claims analyzed under Title VII. *See* 42 U.S.C. § 2000e; N.Y. Exec. Law § 296 *et seq.*; *see also Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) ("We typically treat Title VII and NYSHRL discrimination claims as analytically identical, applying the same standard of proof to both claims"). Although individuals are not subject to liability under Title VII, they may be liable under the NYSHRL if they were personally involved in the conduct giving rise to the claim. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). It is generally accepted, however, that once an employer has been found to have not discriminated, there is no predicate for imposing liability on the supervisors under an aiding and abetting theory. *See Yerry v. Pizza Hut of Southeast Kansas*, 186 F. Supp. 2d 178, 187 (N.D.N.Y. 2002) (citing *Falbaum v. Pomerantz*, 19 Fed. Appx. 10, 15 (2d Cir. 2001)).

Similarly, "[t]he law governing ADEA claims has been held to be identical to that governing claims made under the NYHRL." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6 (2d Cir. 2010); *see also Gonzalez v. Carestream Health, Inc.*, 520 Fed. Appx. 8, 10 n.1

(2d Cir. 2013); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 123 n.1 (2d Cir. 2012).  The Second Circuit has also applied the "but-for" requirement, established in *Gross*, to NYSHRL claims.  *See Gorzynski*, 596 F.3d at 106 n.6; *Mikinberg v. Bemis Co.*, 555 Fed. Appx. 34, 35 (2d Cir. 2014).

Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's NYSHRL claims for substantially the same reasons it denied summary judgment as to her Title VII and ADEA claims.

**H.      Article 1, §11 New York State Constitution**

Where adequate remedies are available under § 1983, a plaintiff has "no private right of action under the New York State Constitution" for equal protection claims under Article 1, § 11.  *Wierzbicki v. Cnty. of Rensselaer*, No. 1:14-CV-950, 2015 WL 4757755, *6 (N.D.N.Y. Aug. 12, 2015) (citations omitted).  Plaintiff has failed to articulate how her state constitutional claim differs from her § 1983 claims.  Therefore, Defendants' motion for summary judgment as to Plaintiff's New York State Constitution claims is granted, and Plaintiff's seventh cause of action is dismissed.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 63) is **GRANTED IN PART AND DENIED IN PART**;[2] and the Court further

---

[2] Those claims that have not been dismissed are as follows: (1) Plaintiff's Title VII claim against Defendant NYS Parks; (2) Plaintiff's ADEA claim against Defendant NYS Parks; (3) Plaintiff's § 1983 claim against Defendants Mitchell, Tully, and Morisette for gender discrimination; (4) Plaintiff's § 1983 claim against Defendants Mitchell, Tully, and Morisette for

(continued...)

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 2, 2019
        Albany, New York

---

[2](...continued)
age discrimination; (5) Plaintiff's NYSHRL claim against Defendant NYS Parks for gender and age discrimination; and (6) Plaintiff's NYSHRL claim against Defendants Mitchell, Tully, and Morisette for gender and age discrimination.